CASE 99—ACTION TO HAVE CERTAIN ACTS OF DEFENDANT, PRIEST, DECLARED TO OPERATE AS AN ASSIGNMENT FOR THE BENEFIT OF HIS CREDITORS—OCT. 30.

# Mt. Sterling Nat. Bank v. Priest and Others.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.  REVERSED.

ASSIGNMENT FOR CREDITORS—PREFERENCE OPERATING AS AN ASSIGN-MENT—DEPOSIT IN BANK INTENDED AS PREFERENCE.

Held:   1. A mortgage executed to secure a loan, made simultaneously therewith, was not an act of preference under the statute, though the purpose of the mortgagor was to raise money to prefer an antecedent creditor, and no subsequent transfer of the mortgage could affect its validity.

2. Where an insolvent debtor deposited in bank an amount almost exactly equal to the amount of a note which the bank held against him, and the deposit was applied by the bank to the payment of the note, the making of the deposit was, in effect, a payment to the bank, and therefore, an act of preference, under the statute, as no inquiry was ever thereafter made by the debtor as to the deposit, and he must have known when he made it that the bank was bound in law to apply it to the payment of the note or release the surety therein.

LEWIS APPERSON FOR APPELLANT.

This is an appeal prosecuted upon a judgment rendered in two actions that were heard together, both instituted by appellant against T. W. Priest and others.  The first action was against

T. W. Priest and I. N. Green, in which appellant sought to enforce the satisfaction of a judgment against the defendants thereto.

The second action was against T. W. Priest, I. N. Green, M. S. Tyler, The Exchange Bank of Kentucky, and S. S. Priest, to which the Traders' Deposit Bank was afterwards made a party. The last-named action sought to have certain acts of defendant, T. W. Priest, declared to operate as an assignment for the benefit of all his creditors, alleging that said Priest and Green were insolvent and that Priest, in contemplation of insolvency, and designing to prefer the Exchange Bank of Kentucky upon a debt Priest owed said bank, upon whom Tyler was bound as surety, within less than six months prior to the institution of the action, paid to the said bank $1,200, merely because Tyler was surety on the debt owing by Priest to said bank. In the second paragraph it is alleged that said Priest, with intent to cheat, hinder and delay appellant in the collection of his debt, executed and delivered to appellee, S. S. Priest, a mortgage to secure a debt of $1,275, stated in the mortgage to have been created simultaneously with the execution thereof, and alleging that said mortgage was not lodged for record within thirty days after its execution, and was made by T. W. Priest in contemplation of insolvency and to prefer one or more of his creditors to the exclusion of appellant, and that S. S. Priest knew of such intent.

By an amended petition, making the Traders' Bank a party defendant, it is alleged that T. W. Priest, within six months prior to the institution of said action, paid to said bank $1,201.35 with the intent to prefer said bank to the exclusion of his other creditors, when he did not have property sufficient to pay all his debts, and in the second paragraph thereof alleging that S. S. Priest, in order to raise the money which he claims he loaned his co-defendant, T. W. Priest, nominally borrowed of said Traders' Bank the sum he loaned T. W. Priest on January 15, 1894, and that on January 16th said S. S. Priest, with the knowledge of said bank of his purpose in doing so, of preferring the said bank to the other creditors of T. W. Priest, assigned the note executed to him by T. W. Priest to said bank without recourse, and that said note is still held by said bank, and that this whole transaction was engineered and completed through the vice-president of said bank acting for the bank and for T. W. and S. S. Priest.

The allegations of the second paragraph are not denied by S. S. or T. W. Priest, and are substantially admitted by the bank.

We claim that the effect of the acts of T. W. Priest, as shown in the record, operated as an assignment for the benefit of all his creditors, and if that is the case, the Traders' Bank obtained nothing by the mortgage on the real estate executed to S. S. Priest.

CARROLL & CARROLL AND M. S. TYLER FOR APPELLEES.

## POINTS AND AUTHORITIES.

1. Concurrence of insolvency and design to prefer must exist before acts amount to a preference. Hoffman v. Bremgs, 83 Ky., 400; Heidrich v. Silva, 89 Ky., 422; Levis, &c. v. Zinn, 93 Ky., 628.

2. Because a mortgage executed by an insolvent debtor to secure a simultaneously created debt is not recorded within thirty days, its validity or priority is not affected, unless there has been an antecedent preference or act of bankruptcy. Muir v. Flinsbach, &c., 95 Ky., 139; Am. & Eng. Ency. of Law (16 vol.), 805; Bigelow on Fraud, 239.

OPINION OF THE COURT BY JUDGE WHITE—REVERSING.

The appellant, the Mt. Sterling National Bank, in July, 1894, brought an action in the Montgomery circuit court against appellees, T. W. Priest and J. N. Greene, seeking the enforcement of judgment for $1,457.55. An attachment was sued out after a return of "No property." This attachment was levied, or attempted to be levied, on certain stocks owned by Priest in several companies. On the same day that the above action was filed appellant also filed its petition against all the appellees, except the Traders' Deposit Bank, seeking to have declared fraudulent, and to operate as a general assignment, certain transactions had with the appellee the Exchange Bank and S. S. Priest. Subsequently the Traders Deposit Bank was made a party, and acts with it were also attacked under what is known as the "Act of 1856," against preferences among creditors. Appellees denied the preferred acts, claiming they were *bona fide,* and without an intention

to prefer, and without a view to insolvency.    These acts are not seriously disputed in the facts, but the contention is principally as to the law of the case.

The facts appear to be that on January 15, 1894, there was an overdue note to the appellee, the Exchange Bank of Kentucky for more than $1,200, executed by T. W. Priest, upon which note appellee Tyler was bound as surety.    On that day S. S. Priest, brother of T. W. Priest, borrowed of the Traders' Deposit Bank something over $1,200, and executed his note, with surety, payable in six months, to that bank.    On the same day S. S. Priest loaned to T. W. Priest the proceeds of this note to the Trader's Bank, and took the note of T. W. Priest, due in six months, with mortgage and pledge, on certain shares of stock in some land companies, being the same attached herein by appellant. Shortly after T. W. Priest received check for the proceeds from S. S. Priest he deposited the full amount, $1,229.50, to his own credit in the Exchange Bank, and then withdrew on his own check $29.50, leaving a net deposit on that day of $1,200.    There was at that time a small balance of $1.35 to the credit of T. W. Priest in the bank, so that, with this deposit, he had $1,201.35 to his credit. The cashier of the Exchange Bank credited this deposit on the overdue note, and charged this credit on the note to the deposit account of T. W. Priest, which closed it up. On January 16th, S. S. Priest went to the Traders' Deposit Bank, and took up his own note, executed the day before, by assigning, without recourse, the note and mortgage of T. W. Priest, executed on the 15th.    It is shown that T. W. Priest never drew his check for the deposit in the Exchange Bank, never demanded same, and never inquired about how, if at all, it was appropriated, and, so far as the bank officers seem to know, was never informed

that his deposit had been appropriated on the debt for which Tyler was surety. It may be noticed that this $1,201.35 did not pay off the note to the Exchange Bank. There was a small balance due it. It is perfectly clear that S. S. Priest loaned the funds he had borrowed of the Traders' Deposit Bank to T. W. Priest at the time of the execution of the mortgage, and that this sum $1,229.50 was deposited with the Exchange Bank.

These are the bare acts that were done, and as to the intention of the parties to the various transactions there is no direct proof of fraud and intention to prefer.

It is insisted for the appellee, the Exchange Bank, that, as there was no specific direction at the time of the deposit as to what or what not to do with the fund, it was compelled by law, for the protection of the surety, Tyler, to appropriate the deposit on the debt due the bank, and that, if it had failed so to do, the surety, Tyler, would have been released. Therefore, as it had a right and it was its duty to appropriate this deposit to the payment of the overdue obligation, and as there was in fact no payment by the debtor, T. W. Priest, there can be no preference and no fraudulent purpose to prefer.

On the part of the Traders' Deposit Bank and S. S. Priest, it is contended that the transaction between them was *bona fide* and real, and the consideration then passed; likewise the transaction between S. S. and T. W. Priest. The proof shows that the mortgage was executed simultaneously with the payment of the money, or, rather, the delivery of the check on the Traders' Bank; that there could be no fraud on creditors because the value of the stocks mortgaged and taken out of the reach of the creditors of T. W. Priest was replaced by the sum for which the mortgage secured. On the other hand, it is contend-

ed that the whole transaction with S. S. Priest and the two banks was but a device to pay the Exchange Bank and release Tyler as surety, and substitute the stocks for the same amount, and that this, of necessity, is a preference of creditors prohibited by the letter and spirit of the act.    We are of opinion that the execution of the mortgage to S. S. Priest by T. W. Priest was a valid transaction, and, being for full consideration then and there passed, is not an act of preference, and is not within the act of 1856.    Whatever might have been the object and purpose of T. W. Priest in securing this loan, it is a fact that he did receive the consideration named in the mortgage.    The execution of the mortgage being regular, and not within the prohibition of the statute, no subsequent transfer or assignment by the mortgage could operate to affect its validity under the statute.

The question of priority between the mortgage and attachment is not before us, as it has been repeatedly held that judgments as to priority merely, without adjudging a fund, are not final, and therefore an appeal will not lie therefrom.    There must be a final judgment appropriating the fund.

We are of opinion that the deposit by T. W. Priest with the Exchange Bank was an act of preference, within the prohibition of the act of 1856, and that that act of preference operated as an assignment of all his property for the benefit of his creditors.    While it is shown that at the time of the deposit by Priest there was no direction as to the application of the funds, the fact does appear that he knew the amount due, and never after the deposit claimed the deposit, or made inquiry as to its disposition, and it is also shown that the bank did that day appropriate the    deposit    to pay the note overdue.    The facts and

circumstances surrounding the whole transaction of T. W. Priest on January 15, 1894, show clearly to our minds that the purpose of borrowing the money from the Traders' Deposit Bank through S. S. Priest and the mortgage of the stocks was for the purpose of paying the note to the Exchange Bank, and protect the surety, Tyler, from liability. We hold that the deposit by Priest, under the circumstances, was a payment to the bank of the sum deposited.

If the bank was bound under the law to appropriate the deposit or release the surety, it is to be presumed that Priest knew this, and also knew that the deposit was in effect a payment, and that the funds deposited would be appropriated. This is a preference of the creditor Exchange Bank, and however fair and honest might have been the purpose of T. W. Priest to protect his surety, Tyler, yet the act of payment, when he was insolvent and when he knew he was insolvent, operated as a preference of one creditor, and was within the prohibition of the statute. The deposit was a payment by T. W. Priest, just the same as if he had paid the money, or deposited with directions to apply it to the note. The deposit was made with knowledge that the law directed its application. This was, in effect, a direction that the funds be applied as the law directed. If it had not been intended for the law to apply it to the payment of the note, there should have been an express direction and agreement of some other application.

For the reasons indicated, the judgment as to case numbered 555 in the court below is reversed, and cause remanded for judgment and further proceedings consistent herewith.

### Response to Petition for Extension.
### (Nov. 14, 1901.)

Counsel for Exchange Bank of Kentucky asks the court to extend the opinion, so as to place that bank in *statu quo* as to the note of Priest, on which Tyler was surety; that is, we are requested to adjudge that the payment of the note, which is declared to operate as an assignment, did not release the surety, Tyler. We must decline to pass on that question, or express an opinion thereon, as no such question is presented by any plea in the record. Until that question comes regularly before us, we will not adjudicate as to the rights of the parties herein.