CASE 97—ACTION BY EXCHANGE BANK OF KENTUCKY AGAINST C. F. THOMAS, &C., ON A NOTE.—JUNE 9.

# Exchange Bank of Kentucky v. Thomas, &c.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

LIMITATION—OBSTRUCTING SUIT.

Held: The surety on a note given by an insolvent to a bank procured the debtor to deposit money in the bank, which the latter appropriated to the note. Subsequently other creditors of the insolvent brought an action, in which it was adjudged that this appropriation constituted a fraudulent preference, and the bank was compelled to pay back the money, less its pro rata share. HELD, that under Kentucky Statutes, section 2552, providing that if a surety shall obstruct or hinder his being sued, the time of such obstruction shall not be computed as part of the time of limitation, the period intervening between the bank's appropriation of the deposit and the termination of the suit to have such deposit declared an illegal preference should be deducted from the period of limitation running in favor of the surety.

H. R. PREWITT, FOR APPELLANT.

On September 14, 1902, T. W. Priest, with M. S. Tyler as surety, executed a note to the appellant bank for $1,160.80, due in four months. On January 15, 1894, Priest deposited in said bank to his credit $1,201.35. The cashier of the bank charged said note to said deposit which closed the account. Afterwards and within six months the Mt. Sterling National Bank instituted a suit under the act of 1856, asking to have said payment declared a preference, and that same be apportioned among the creditors of Priest. The lower court decided adversely to plaintiff, but on appeal it was held to be an act of preference and operated as an assignment for benefit of Priest's creditors, and in the settlement which followed Priest received credit on said note for the pro rata due the Exchange Bank of $708.90.

In the meantime Priest having died, C. F. Thomas was appointed his administrator, and this suit was brought against his estate, which was insolvent, and the surety, M. S. Tyler, on the said note. Tyler answers and pleads and relies upon limitation, seven years having elapsed since the maturity of the note. The

Exchange Bank of Kentucky v. Thomas, &c.

appellant bank in reply, in avoidance of said plea of limitation, alleges that said deposit of $1,201.35 was made at the instance and suggestion of said Tyler for the real purpose of compelling the bank to credit the note upon which he, Tyler, was surety with the amount of such deposit, and that the bank acted in good faith in the matter, and that by said Tyler having been a party to said original transaction that the bank was directly and indirectly hindered and obstructed from suing him on the note. To this reply a demurrer was filed and sustained, and the appellant bank declining to plead further, its petition was dismissed.

It is the contention of the appellant bank that it did what it was required to do under the then existing law; that it acted in *good faith* in the original transaction and that during all the litigation which took place between the creditors of Priest and the bank that such time should not be counted as running against said bank in favor of the surety, Tyler.

### AUTHORITIES CITED.

Mt. Sterling Nat. Bk. v. T. W. Priest, 23 Ky. Law Rep., 1325; secs. 2551 and 2552, Ky. Stats.; Pursifull v. Pineville Banking Co. Assn., 17 Ky. Law Rep., 38; Faulkner v. Cumberland Valley Bank, 14 Ky. Law Rep., 923; Masonic Savings Bank v. Bangs, Admr., 8 Ky. Law Rep., 16; Mt. Sterling Nat. Bank v. Greene, 13 Ky. Law Rep., 178; Morse on Banking, 3 ed., vol. 2, sec. 562; Northern Bank of Ky. v. Farmers' Nat. Bank., 23 Ky. Law Rep., 700; Struss v. Masonic's Sav. Bank, 89 Ky., 61; McMakin v. Stratton, 82 Ky., 226.

LEWIS APPERSON AND CARROLL & CARROLL, FOR APPELLEE TYLER.

### POINTS AND AUTHORITIES.

The acts or conduct of the surety, Tyler, do not bring him within the exception provided in section 2552, Kentucky Statutes, as to "obstruction or hindrance" of suit. Coleman v. Walker, 3 Met., 68; Kennedy v. Foster, 14 Bush, 479; Reed v. Hamilton, 92 Ky., 619.

The principle stated in Northern Bank of Kentucky v. Farmers' National Bank, 23 R., 696, and relied upon by appellant, is not applicable to the case at bar for the reason that in the case first named, there was no issue between the creditor and surety, nor was there any question of limitation, and for the further reason that appellant in the case at bar was guilty of such laches as released the surety. Struss v. Masonic Savings Bank, 89 Ky., 61.

Exchange Bank of Kentucky v. Thomas, &c.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

This action was instituted by the appellant, the Exchange Bank of Kentucky, against the appellees, C. F. Thomas, administrator of T. W. Priest, and M. S. Tyler, on the 15th day of July, 1902, to recover a judgment upon a note for $1,160.80 executed to the bank by T. W. Priest, deceased, with appellee M. S. Tyler as his security, which matured on the 14th of January, 1893, subject to a credit of $708.90 as of 1st of May, 1902. The defendant, M. S. Tyler, for answer, said that he was only the security for T. W. Priest for the note sued on, and that more than seven years had elapsed since the maturity thereof, and that he was released by the lapse of time and the statute of limitation, which he pleaded in bar of a recovery. In avoidance of the plea of limitation, the bank replied that on the 15th day of January, 1894, at the instance and suggestion and upon the advice and procurement of the defendant, M. S. Tyler, the deceased, T. W. Priest, deposited to his credit with the plaintiff bank $1,201.35, for the purpose of compelling the bank to appropriate the money to the payment of the note sued on, and that, in pursuance of its duty under the law, it did credit the Priest note, on which defendant Tyler was bound as security, with a sufficient amount of such deposit to extinguish the note, and charged the credit therefor to Priest's account with the bank; that within six months thereafter a creditor of Priest brought action for the purpose of having this transaction adjudged a fraudulent preference by Priest, under the act of 1856; that both plaintiff and defendant defended this suit, but that it was finally held in the opinion in the case of The Mt. Sterling Bank v. Priest, etc. (111 Ky., 886, 23 R., 1315), 64 S. W., 972, that the act of the bank in applying the money deposited with it by Priest to the pay-

ment of its note constituted a preference of the bank, which operated as an assignment of the debtor's property, under the act of 1856, and that it was compelled to pay back the money so appropriated, with interest thereon, to the assignee of Priest, less the sum of $708.90, the pro rata of its debt paid by the estate of Priest, and charge that the period of time which intervened between the date of its application of the deposit to its note until the final reversal of the judgment of the circuit court by this court should be deducted from the time ensuing from the date of the maturity of the note to the institution of this suit, because during this period it was obstructed and hindered from suing the defendant on its obligation, and pleaded that by reason of these facts the appellee is estopped from relying upon the statute of limitation. A general demurrer was sustained to this reply, and carried back to the petition, and, plaintiff declining to plead further, its petition was dismissed, and it has appealed to this court.

The law is well settled in this State that if, at the maturity of a note payable to the bank, the principal had a sufficient sum of money to his credit as a general deposit in the bank, good faith towards his sureties requires that the bank should appropriate the money so held to its payment, and its failure to do so operates as a release of the sureties. See Faulkner v. Cumberland Banking Co., 14 Ky. Law Rep., 923; Pursifull v. Pineville Banking Co., Assignee (97 Ky., 154, 17 R., 38), 30 S. W., 203. So, if appellees' contention is a sound one, a bank holding a note on an insolvent principal, but amply secured by personal security, occupies this precarious attitude: If it fails to appropriate the money of the insolvent principal in its charge to the payment of the note, it relieves the security. If, on the other hand, it appropriates the money of its

insolvent or failing principal to the payment of its debt, it runs the risk of having to surrender the money which it has been forced by law to appropriate, at the demand of some other creditor, as a payment in fraud of the bankrupt act. After the appropriation by the bank of the insolvent principal's funds to the payment of its debt, it had no cause of action against either him or his security until after it had been compelled to surrender and pay back the money so appropriated. To meet this contingency, section 2552 of the Statutes was enacted. It provides that: "If such surety shall abscond, conceal himself, or by removal from the State or otherwise, obstruct or hinder his being sued, the time of such obstruction shall not be computed as part of the time of limitation in said section allowed." In the recent case of the Northern Bank of Kentucky v. Farmers' National Bank (111 Ky., 350, 23 R., 696), 63 S. W., 604, the court had before it a case very similar to the one at bar. In that case, J. I. Moore deposited with the Northern Bank of Kentucky a check for $4,557.75. The bank held a note against him for $4,553.78, which had been due for three months, and, in a few days after the deposit, charged this note on his account. Subsequently the Farmers' National Bank of Cynthiana attacked this transaction as within the terms of the act of 1856. Upon the trial, it developed that Moore was insolvent at the time of the deposit, and the bank had reason to suspect this fact, but that the deposit was made by him without any intention on his part to give the bank a preference over his other creditors. Nor did the Northern Bank intend to charge the note to the account of Moore at the time the deposit was made. Yet the act was held a preferential one, upon the theory that Moore knew he was insolvent at the time he made the deposit, and that the design to prefer would

be presumed unless the accompanying circumstances plainly show that there was no such intention; and the bank was compelled to account for the money. But in discussing the very question we have at bar, the court in that case, after referring to a number of former adjudications of this court, says: "The statute against preference, by insolvent debtors applies, however innocently the creditor may act in the transaction. Failing debtors are especially often solicitous to protect their sureties. When money is tendered to the creditor, or he has the means of retaining it in his hands, he is bound to accept it or retain it, in order to hold the surety. The transaction is good if not attacked within six months, and when attacked and the payment is adjudged within the statute. As, by the terms of the statute, such transfers are subject to the control of equity, they must, upon equitable principles, place the parties where they were originally."

In this case the allegation of the reply is that the appellee Tyler procured the deposit to be made with the appellant bank by his insolvent principal for the express purpose of forcing it to appropriate the money to its debt or release him from the obligation. After the deposit by Priest, the bank was forced by law to appropriate the money so held by it to the payment of its note, or lose all legal recourse against the appellee Tyler; and, the note being paid, no cause of action remained to it against him until the decision by this court that the appropriation was illegal. It seems to us that it necessarily follows that the bank was by these acts prevented from the collection of its demand from appellee.

In Newton v. Carson, 80 Ky., 309, 4 R., 1, Newton had filed his petition against Covington as principal and Carson as surety on a note, but no process was issued there-

on. About the time the petition was filed, Carson agreed with Newton that he would, during the term of court which was then in session, confess judgment for the amount of the note. Pursuant to this agreement, no process was issued on the petition. On the last day of the term, Carson, when asked to comply with this agreement, refused to do so. Process was thereafter issued, seven days after the expiration of the seven years from the time the note became due. Carson relied upon the statute of limitations as a defense, and the trial court peremptorily instructed the jury to find for him. Upon appeal to this court, the judgment was reversed, this court saying: "To countenance such chicanery as the making and violating of such an agreement as this would invite into the sacred precincts of a court of justice the arts of the deceitful, and furnish a well-appointed place and secure mode of perpetrating fraud." The court held that this was a hindering by the security of the plaintiff, which took the case out of the statute. The decisions in Coleman v. Walker, etc., 60 Ky., 68, 77 Am. Dec., 163, and Kennedy v. Foster's Ex'r., 77 Ky., 479, are not in point. They only decide that a verbal request from the security to the creditor not to institute suit upon his debt, or a promise to pay at some future time, does not either obstruct or hinder the bringing of an action. In the latter case, Judge Cofer says: "The failure to sue in such a case is the voluntary act of the creditor. He is left free to do as he prefers, may sue if he likes, and can not by any fair or reasonable interpretation be said to be either obstructed or hindered." The facts in this case clearly distinguish it from these cases, as here the joint act of the principal and security forced the bank to appropriate the money to the payment of its debt, and effectually put it out of its power to sue until after the final decision

that its appropriation of the insolvent principal's money was illegal.

For reasons indicated, we are of the opinion that the trial court erred in sustaining the demurrer to plaintiff's reply, and the judgment is reversed, and cause remanded, with instructions to overrule the demurrer, and for proceedings not inconsistent with this opinion.

Judge O'Rear not sitting. Judge Paynter dissenting.

Petition for rehearing by appellee overruled.

(June 25, 1903.)

Dissenting opinion by Judge Paynter:

I dissent because I am of the opinion that the bank could have brought its suit at any time after the debt matured. If it was misled by the deposit, it was again placed in a position to extricate itself from the effect of it, because within six months it was advised by the suit to have it so treated, that it was a preferential act. When this was done the bank was bound to take notice of the effect of the transaction, and if it desired to keep the statute of limitation from running, it should have brought its suit. After deducting the time which elapsed between the date of the deposit and the institution of the suit to have it adjudged a preferential act, more than seven years elapsed after the maturity of the note until the suit was brought on it. If the surety had pleaded that the deposit paid the note, the bank could have successfully shown it did not amount to a payment of it, because of the preferential character of the act. The debt was never extinguished, and was enforceable.