## Henderson Wagon Works v. H. J. Heinz Company.

(Decided May 5, 1922.)

### Appeal from Henderson Circuit Court.

1. Appeal and Error—Finding of Chancellor.—Where the law and facts are submitted to the judge in a common law action, his finding of fact will be treated as the verdict of a properly instructed jury; and although the evidence is conflicting on an issue, if there is evidence to support the finding it will not be disturbed unless flagrantly against the evidence.

2. Manufactures—Increasing Efficiency of Business—Part of Appliance.—When one who operates a manufacturing plant buys and installs in the plant a piece of machinery or some appliance to be operated in connection with the manufacturing concern, and who by his own ingenuity or through some practical knowledge of his own, improves upon the use of the machinery or appliance by attaching to it something which increases its efficiency and cheapens the operation of the business, that addition to the machinery or appliance after long use in connection with it, and when its efficiency has been demonstrated, becomes a part of the machinery or appliance just as if it had originally been installed as a part of it.

3. Manufactures—Sales—Title of Appliance.—The sale by a manufacturing concern of its manufacturing plant and certain parts of its machinery and appliances used in connection therewith, which sale embraces an "automatic sprinkler system," and it is shown that there had been for a long time used in connection with the sprinkler system a pump which was not originally a part thereof, but which had been attached to and used in connection with it, the title to the pump passes with the sprinkler system.

HENSON & TAYLOR for appellant.

YEAMAN & YEAMAN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

On the 4th of February, 1918, appellant, a Kentucky corporation, sold and by written contract agreed thereafter to convey to appellee, a Pennsylvania corporation, certain real estate and personal property therein designated, owned by appellant in Henderson county; and thereafter on the 12th day of February, 1918, it conveyed the real estate and described the personal property going therewith in the language of the contract of February 4th.

The personal property passing under the contract and deed are described as

"The boilers and equipment and appliances connected with them and contained in the boiler room of the said wagon works; the direct connected Ideal engine and commercial dynamo; switchboard; electric wiring; electric lamps throughout the plant; the automatic sprinkler system and all heating apparatus."

In February, 1919, appellant brought this ordinary action claiming to be the owner of and entitled to the possession of one Dean's steam fire pump, alleging that appellee had possession of the same and was wrongfully withholding it, and asking judgment for its value if it could not be had, and damages for its detention.

The answer denied title of plaintiff to the pump, and in a separate paragraph set up the contract and deed and alleged that at the time of the purchase the pump was permanently fixed and attached to and was a part of the real estate conveyed in the deed, and was also then and had ever since been a material and essential part of the automotic sprinkler system and used in connection therewith and was therefore embraced within the terms of the contract and deed; and in a third paragraph asserted a counterclaim against the plaintiff, which, however, on the trial was disallowed, and there being no cross appeal is not now involved.

By reply there was a denial that the pump was fixed and attached to or a part of the sixteen acres of land embraced in the conveyance, or that it was then or had ever been a material or essential part of the automatic sprinkler system; and further alleged that at the time of the sale by express agreement of the parties the pump was excluded, among other equipment and appliances, from the terms of the sale, and was not intended to be and was not included in said executory contract or deed, and the express exclusion thereof was left out of the same by the draftsman thereof by the mutual mistake or oversight of defendant's agent and the plaintiff.

By agreement of the parties the trial was had before the judge of the court without the intervention of a jury, and in the judgment it is found as a fact that there was no contract or agreement between the parties that the pump was to be reserved by the plaintiff from the operation of the sale; and that at the time of the contract the pump was permanently fixed and attached to and a part of the realty described, and was then and yet an integral part

of the sprinkler system described in the contract and deed, and then adjudged as a matter of law the plaintiff could not recover and dismissed its petition.

On the issue whether the pump was specifically excepted from the provisions of the contract, the evidence was very conflicting, but there was no evidence that such a provision was by mutual mistake of the parties left out of the contract, the contract having been executed after these alleged oral agreements. Where the law and the facts are submitted to the judge in a common law action his finding of fact will be treated as the verdict of a properly instructed jury, and while the evidence is conflicting as to this issue there is evidence to support the finding and as it is not flagrantly against the evidence, it will not be disturbed.

The principal question is whether the pump in question was a material and essential part of the automatic sprinkler system the title to which passed under the contract and deed.

An automatic sprinkler system, as described in the evidence, consists of a number of water pipes attached to the ceiling of a building, in which pipes there are a great many small holes or apertures which are closed by a soft metal which melts or becomes fusible when comparatively little heat operates on them, so that when a fire starts within the building the heat quickly melts this soft metal and the water flows through the small holes and extinguishes the fire in a given area. It is apparent that the sprinkler system is designed only for fire protection within the building, and equally clear that the greater the water pressure in the pipes the better the fire protection, for the increased pressure would cause the water when escaping from the pipes not only to come therefrom with greater force but to cover a larger area within the building.

The evidence shows that the pump in question was not installed in the first place as a part of the automatic sprinkler system, but was installed a short time before that system was and was originally connected up with a water supply intended to furnish protection against fires outside of the building in the yards; but when the automatic sprinkler system was installed or shortly thereafter, the pump was also connected up with that system with the purpose of furnishing, in case of fire, greater pressure in the pipes of the sprinkler system and thereby afford better and safer fire protection within

the building. Both the pump and the sprinkler system were installed in the year 1903 and the pump was operated in connection with the sprinkler system at all times thereafter until the sale in question.

It is shown that the sprinkler system in the building was connected with three water supplies, first, the city water supply, from which there was an inadequate pressure; second, a supply from an overhead tank, which was more or less limited and which might be at times frozen or out of commission; and, third, from a larger underground reservoir with which the pump was connected and from which a sufficient pressure could be forced into the pipes in case of fire.

The evidence shows that the sprinkler system installed in the building could be, and in many instances was, operated without a pump, but it also unmistakably shows that when operated in connection with such a pump it furnishes not only more pressure but better and safer fire protection and, in the present instance, from an entirely different source of water supply. Not only so, that because of such additional fire protection the insurance rate on the building and its contents was lower than it would otherwise have been.

So, from all this evidence, it is apparent that not only was the pump after it was attached to and operated in connection with the sprinkler system a material part of that system, but inasmuch as it furnished to the owners of the building and the plant an additional fire protection which they would not otherwise have had, and enabled them to procure their insurance at a lower rate, it was in every practical sense an essential part of the sprinkler system. Not essential, possibly, in the sense that the sprinkler system could not operate without it, but essential in the practical sense that adequate and cheap fire protection could not be had without it.

When one who operates a manufacturing plant buys and installs in his plant a piece of machinery or some appliance to be operated in connection with the manufacturing concern, by his own ingenuity or through some practical knowledge of his own, improves upon the use of the machinery or appliance by attaching to it something which increases its efficiency and cheapens the operation of the business, that addition to the piece of machinery or appliance after long use in connection with it and when it has been demonstrated that it adds to its effective use, becomes a part of that machinery or appli-

ance in the operation of the business just as if it had been originally installed as a part of it.

Unmistakably, we think that under the evidence in this case the pump in question, after having been attached to the automatic sprinkler system and used in connection therewith, and it had been demonstrated that it increased its effectiveness, became and was a part of that system although not originally installed as such. And in the light of the finding of fact by the court that there was no express exclusion of the pump intended in the contract, we think the sale of the sprinkler system certainly embraced the pump which had been used in connection with it, which use was known to the parties to the contract, and this conclusion is reinforced by the fact that in the written contract and deed certain personal property and certain parts of machinery were expressly excluded and the exclusions did not embrace the pump.

This view of the case makes it unnecessary to determine whether the title to the pump was attached to the real estate in such manner as that it passed therewith.

Judgment affirmed.