## Sparkman's Guardian v. Huff.

(Decided Nov. 13, 1936.)

T. R. McBRAYER for appellant.

C. B. SPICER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

This is an appeal from a judgment denying to appellant a personal judgment against J. J. Huff, upon the following note:

"$1,000.00                    December 28, 1923.

"One day after date I promise to pay to the order of James Jackson, Gdn., One thousand dollars, at 6% Int., from date, value received.

"H. L. Huff.
"J. J. Huff, surety."

H. L. Huff died intestate April 22, 1933, and upon July 3, 1933, J. J. Huff qualified as administrator of his estate.

It must be noted that thereafter J. J. Huff occupied two relations to this note, an individual relation as surety resulting from his having signed it as such, and a trust relation resulting from his appointment as administrator of H. L. Huff, but these two relations are just as separate and distinct as they would be had George Green or any other stranger been qualified as such administrator.

On January 22, 1935, Jackson began this action against J. J. Huff, individually and as administrator of H. L. Huff.

No answer was filed by J. J. Huff as administrator of H. L. Huff, and judgment against him as administrator followed.

Answering individually, J. J. Huff pleaded that he signed this note as surety; that more than seven years had elapsed after the note became due before this action was instituted; and that it is barred by limitation. Section 2551, Ky. Stats.

By reply plaintiff alleged that at divers times and places J. J. Huff had promised to pay this note, and in his rejoinder J. J. Huff denied this.

Plaintiff amended his reply and alleged that, by J. J. Huff's oft-repeated promises to pay this note, he had been beguiled into waiting, and he relied on this as an estoppel against J. J. Huff.

On October 25, 1935, the parties waived the jury and the case was submitted to the court, and the court dismissed plaintiff's petition as against J. J. Huff individually.

Plaintiff's motion and grounds for a new trial were overruled, this appeal followed, and plaintiff is relying upon the following grounds for reversal:

Section 2552, Ky. Stats., and Estoppel.

The plaintiff cites section 2552, Ky. Stats., and argues that, by the oral promises he made, J. J. Huff had hindered and obstructed his bringing suit, and had thereby, under the provisions of section 2552, estopped himself to assert and rely upon the limitation set out in section 2551.

James Jackson testifies to two oral promises of J. J. Huff to pay him and asserts he has one written promise to pay him. This written promise we shall consider later.

The first oral promise to which he testifies is claimed to have been made about the first of the year 1932, and this is what he says about it:

"I told the boys I was needing some money. They said they would pay me. Jim and Harmon both said they would pay me."

The second oral promise was made in January, 1934, and in this language according to Jackson's testimony:

"He came to me and said, 'Jim, E. L. Harmon has put that note out against me, and you bring suit and when it is brought before the court I will acknowledge to the note and give you judgment.'"

J. E. Jackson, the surety upon the guardian's bond of his father, James Jackson, and who was attending to this matter for his father, testifies this occurred a little over a year after H. L. Huff died:

"J. J. Huff told me after H. L. Huff died to go ahead and bring suit, that L. Halcomb sued him and

that he wanted for us to share in it and said he would give us judgment.''

J. J. Huff denied ever having promised to pay this note except when he signed it. As to the two requests to sue J. J. Huff says this:

"I did as administrator. I was administrator for H. L. Huff's property, and another fellow brought suit and I advised him to bring suit so as to get his claim in too against the estate.''

Thus there was an issue about all these promises, and the court sitting without a jury has found for J. J. Huff. That finding we have frequently written is to be treated as the verdict of a properly instructed jury, and, since it was a question of which witnesses should be believed, that is the end of it. Newell v. Dunnegan, 1 Ky. Law Rep. 354; O'Daniel v. Com., 8 Ky. Opin. 125; Henderson Wagon Works v. H. J. Heinz Co., 194 Ky. 658, 240 S. W. 356; Kentucky Home Life Ins. Co. v. Johnson, 263 Ky. 787, 93 S. W. (2d) 863.

If there had been no denial of these promises the result would not be different. This is not a suit on a new promise, but upon the note itself, and in Coleman v. Walker, 3 Metc. (60 Ky.) 65, 77 Am. Dec. 163, we had just such a situation as would be presented were these promises undenied, and the court said:

"There seems to have been no attempt to thwart or hinder the creditor from suing on the note in opposition to his own desire. On the contrary, application was made for his indulgence, and his consent thereto obtained. He was not therefore defeated or obstructed from bringing the suit, but could at any time, after the maturity of the note, have commenced proceedings thereon. The delay was not in opposition to, but in accordance with, his will, and although it resulted from the application of the sureties, and was for their accommodation, it cannot be ascribed to any hindrance or obstruction they presented to his legal rights; and such applications for indulgence, although granted, cannot preclude the sureties from the protection of the statute.''

In the case of Carr's Ex'r v. Robinson & Dudley, 8 Bush (71 Ky.) 269, there had been written upon the $1,000 note, at or about the time it was executed, the

following request: "If not paid I request indulgence."
This is copied from that opinion:

> "The executor pleads the statutes of limitation as
> a bar to any recovery upon the note for one thous-
> and dollars. * * * The appellees insist that the in-
> dorsement on the one thousand dollar note having
> been made by Mrs. Carr [as the proof shows], in
> which she asks indulgence, was the inducement for
> the appellees to prolong the collection of that note.
> * * * No more force should be attached to this in-
> dorsement than if the request had been verbally
> made when the note was signed. * * * More than
> fifteen years had elapsed from the maturity of this
> note to the date of the institution of this action, and
> the burden of proof was upon the appellees to show
> a state of fact that would relieve the demand from
> the operation of the statute. If a promise was made
> after the running of the statute, this promise cre-
> ated a new obligation, and constituted a new cause
> of action upon which suit should have been insti-
> tuted. On the other hand, if a promise was made
> to pay the debt within fifteen years from the ma-
> turity of the note, then the statute commenced run-
> ning from the date of the promise; and if fifteen
> years had not elapsed from the date of the promise
> to the institution of the action, it presented no ob-
> stacle in the way of a recovery. After the lapse of
> fifteen years from the maturity of the note without
> suit the obligation or note is regarded as dead, and
> it can not be revived by any promise to pay so as to
> authorize a suit on the original debt or obligation;
> but if the promise is made during the fifteen years
> from the maturity of the note or obligation, it length-
> ens the vitality of the paper, and the statute com-
> mences to run from the date of the promise. * * *
> The proof of the appellee tends to show that Mrs.
> Carr in her life-time made frequent promises to pay
> this money, and the last promise, according to the
> witness McCalla, was made in August, 1860 or 1861.
> The statute had then run against the debt and was a
> complete bar to its recovery, and if such a promise
> was made at that time the action should have been
> upon this promise, and not upon the original debt."

By section 2552 it is provided that section 2551 shall
not apply to any delay assented to by the surety in writ-

ing. In construing that expression in Kennedy v. Foster's Ex'r, 14 Bush (77 Ky.) 479, we said:

"That the prescribed limitation shall not apply to any delay assented to, in writing, is equivalent to declaring that it shall apply to any delay not so assented to. * * * A request to forbear, or a promise to pay the debt at a future time, can not in any just sense be said to either obstruct or hinder the bringing of an action. The failure to sue in such a case is the voluntary act of the creditor. He is left free to act as he may prefer, may sue if he will, and can not, by any fair or reasonable interpretation, be said to be either obstructed or hindered."

There is neither pleading or proof of any written assent by J. J. Huff that plaintiff should forbear instituting suit.

We are fully aware that sureties have been held to have so hindered or obstructed their creditor as to require that the time thereof be deducted in computing the time of limitations, for example, take the case of the sureties, Sayre and Hopkins, in Walker et ux. v. Sayre & Hopkins, 5 Bush (68 Ky.) 579. Upon that note the seven years would have run on May 6, 1866. "In the summer or fall of 1865, Sayers wrote to Mrs. Walker: 'You need give yourself no uneasiness about the money; you shall have it this fall, certain.' April 12, 1866, Hopkins wrote to Mr. Walker, saying, among other things: 'Mr. Sayers was here yesterday, and says he is ready to make his part of the payment. I have some money due me on the 12th day of next month. I have notified the parties that I will need it, and they say they will be sure to have it; so if you will come up on the 13th or 14th you will be sure to have it.' * * * Walker, who lived some forty miles distant, and in another county, did come, according to said invitation, to get the money; but, instead of making payment, Hopkins informed him that the debt was barred by the statute of limitations, and they did not intend to pay it; and when suit was brought on it, the 11th of the following July, they demurred to the petition because said debt was, as they insisted, barred; and which demurrer was erroneously confessed, and an amended petition filed, setting out the facts and said letters. The day named by Hopkins to pay the money was six or seven days after the expiration of seven years from the date the note was due, and

the day suit was brought was seven years, two months, and five days from the time it was due. On the defense of bar by limitation, the court gave to the jury a peremptory instruction to find for defendants, which they did.'' This court reversed that judgment.

In Newton v. Carson, 80 Ky. 309, the note would have been past due seven years on December 3, 1876. Newton filed suit October 20, 1876. Carson, the surety, saw Covington, the principal debtor, and told him they had better confess judgment on the note, and they agreed with Newton they would do so. They failed to do so and, when process was issued on December 11th, Carson pleaded limitations and was successful, but we reversed that judgment. Those cases are quite unlike this one.

It is useless to cite other cases. In Exchange Bank of Ky. v. Thomas, 115 Ky. 832, 74 S. W. 1086, 75 S. W. 283, 25 Ky. Law Rep. 228, these cases are reviewed. They have never been overruled and have become and are now the settled law of the state, except as they may be modified by the ''Negotiable Instrument Law,'' which we shall consider later in this opinion.

''A promise, made before a debt is barred, serves to suspend the running of the statute or to prolong the statutory limitation by cutting off the antecedent time, and the action to recover must be brought on the original obligation. If, however, the debt is barred at the time of the new promise, it must be brought on the new promise.'' City of Louisa v. Horton, 263 Ky. 739, 93 S. W. (2d) 620, 621, 623.

The bar fell in this case on December 29, 1930, each one of these promises was made after that time, and this is not a suit upon a new promise but is a suit on the original obligation.

In Emmons v. Overton, 18 B. Mon. (57 Ky.) 643, the bar fell August 10, 1849. Emmons paid $136.11 November 3, 1849. Suit was begun in March, 1855. Emmons was surety only and he pleaded limitation. In the opinion the court said:

''The effect of the partial payment made by the surety is the next question to be considered. To determine what effect should be given to it, it will be proper to inquire into the nature and extent of the liability of a surety. It is purely a legal obli-

gation, created by the execution of the writing, and not originating out of the consideration upon which the liability of the principal debtor is founded. There is therefore a manifest distinction between the debtor and his surety. The former is under a moral as well as a legal obligation to pay the debt; the latter is under a legal obligation merely. The former may be liable on account of the original consideration; the liability of the latter does not go behind, and is not antecedent to the execution of the writing by which it is created. Upon what principle, then, is it, that a partial payment of the debt by a surety is to be regarded as sufficient to deprive him of the benefit of the statute. If the payment be made before the expiration of the seven years, it is certainly not entitled to any effect, because, in that case, he would be liable for the debt at the time of the payment, and the recognition of such liability could not prevent him from subsequently relying upon the statute, when the limitation had expired. If the payment be made, as it was in this case, after the seven years had elapsed, and the surety was thereby discharged, it could not revive his liability, nor take the case out of the operation of the statute. Even if it could be regarded as an acknowledgment of a subsisting liability, it would only prove that the surety was ignorant that he had been discharged by the lapse of time, and if it could be regarded as an implied promise to pay the debt it would be without consideration, and therefore not obligatory.''

We had this question again in Warren v. Fant's Trustee, 79 Ky. 1, and in reversing that judgment we wrote:

''In Emmons v. Overton [18 B. Mon (643) 650], this court held, that 'when a surety is discharged from his legal liability, a promise to pay the debt, even if the promise were in writing, would not be legally binding, unless it was made upon sufficient consideration.' In Cotton v. Edwards [2 Dana, 106], it was said, that 'an obligation once destroyed, so that it is no longer binding, cannot, in the nature of things, be resuscitated without the consent of the obligor. It must be done by a new contract, to which the obligor is a party.' And, as said in Emmons v. Over-

ton, supra, if the obligor thus discharged be a mere surety, and, therefore, under no moral obligation to pay the debt, the new promise must be made upon sufficient consideration; i. e., some new consideration.''

### Written New Promise Claimed.

This check was given to plaintiff by J. J. Huff, and plaintiff relies on it as a new promise:

"Harlan, Ky., January 6, 1932.

"Citizens' National Bank, pay to the order of James Jackson, Gdn., $220.00 for on note of H. L. Huff.

"J. J. Huff."

The plaintiff did not present this check at once, and on January 11, 1932, the bank was closed. Nothing has ever been collected on the check, but from what was said above it is clear that this check cannot affect the liability, if any, of J. J. Huff, who was a surety only.

Whether action could be maintained on this check or not, we do not say, as that has not been attempted.

### Effect of Negotiable Instruments Law.

Previous to the enactment of the Negotiable Instruments Law many states had enacted statutes favoring sureties. This state had done so. See sections 2551, 4665, 4666, and others of our statutes.

The compilers of the Negotiable Instruments Law took no notice of such statutes, and, since it is provided by section 3720b-195 that all inconsistent laws are repealed, much confusion has resulted. We had in the case of Redford v. Crowe's Adm'x, 225 Ky. 142, 7 S. W. (2d) 842, questions as to sections 4665 and 4666, and we upheld those statutes. In the case of Reidlin Co. v. Haake, 218 Ky. 47, 290 S. W. 1050, we upheld the provisions of section 2551, Ky. Stats., which is the question now before us, hence we need go no further, and upon the authority of this Reidlin Case this judgment is affirmed.